# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No.    **26mj1074**
An Instagram (Meta Platforms, Inc.) )
Account with the username: **mtnzanam**, )
using Instagram ID No. **521317309** )
**("Subject Account").**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____Northern\_\_\_\_\_ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:

See attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Nicholas Schultz*
*Applicant's signature*

Nicholas Schultz, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date:  January 23, 2026

*Barbara L Major*
*Judge's signature*

City and state:  San Diego, California     Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**

**APPLICATION FOR A SEARCH WARRANT**

I, Nicholas Schultz, Special Agent, Homeland Security Investigations ("HSI"), being duly sworn, hereby state as follows:

## A.    INTRODUCTION

1.    I make this affidavit in support of applications for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platforms, Inc. ("Meta"), a social networking company headquartered in Menlo Park, California, to disclose records and other information in its possession that are relevant to an ongoing criminal investigation. As described further in Attachment A, this request is made to search the following Instagram user account (through parent company Meta Platforms, Inc.) for items that constitute evidence, fruits, and instrumentalities of the crime and conspiracy to commit the crime of Importation of a Controlled Substance in violation of Title 21, United States Code, 952 and 960 (the "Target Offense") as further described in Attachment B, for the specific time periods noted in the next paragraph:

*Instagram Account Username*: ***mtnzanam***, using Instagram ID No. ***521317309*** ("**Subject Account**").

2.    As described in greater detail below, this warrant requests the production of content from **May 1, 2025** [the month Defendant stated that she contacted her recruiter through Instagram] up to and including **June 3, 2025** [the date of Defendant's arrest], and Meta location data acquired during **June 3, 2025** [the date of Defendant's arrest].

3.    Based on my training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe that evidence of the Target Offense, including location data, is contained within the **Subject Account**. There is also probable cause to believe that a search of the **Subject Account** as described in the corresponding Attachment A will produce evidence, intelligence and/or instrumentalities of the aforementioned crime, as described in the corresponding Attachment B.

//

## B.    <u>EXPERIENCE AND TRAINING</u>

4.    I am a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

5.    I have been employed as a Special Agent with HSI since 2024. I am currently assigned to the HSI Office of the Resident Agent in Charge, in Oceanside, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

6.    During my tenure with HSI, I have participated in the investigation of various controlled substance trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in controlled substance trafficking investigations, I have gained a working knowledge of the operational habits of controlled substance traffickers, particularly those who attempt to import controlled substances into the United States from Mexico at Ports of Entry.

7.    From my training and experience, I am also familiar with the methods used in controlled substance trafficking, the trafficking patterns used by criminal organizations and patterns of controlled substance abuse. I have also discussed with other federal agents, NTF Task Force Officers and other, State, and local law enforcement officers the substance of their similar experiences, including the results of their own investigations and interviews.

8.    For example, I am familiar with the methods utilized in controlled substance trafficking operations, as well as the methods and means used by Drug Trafficking Organizations ("DTOs") to conduct controlled substance trafficking. Specifically, I am familiar with the importation of illegal controlled substances into the United States from Mexico, the transportation of controlled substances to distribution points within the United States, including San Diego and Los Angeles, and the distribution of controlled substances to destination points throughout the United States. Additionally, I know that once the

controlled substances reach their destination cities, they are distributed by wholesale dealers down to street level users often through mid-level distributors. I am also aware that controlled substance trafficking organizations collect and transport controlled substance proceeds from the sale of their controlled substances and often these controlled substance proceeds are transported in the form of bulk currency. Through previous investigations, I have obtained knowledge regarding the ordinary meaning of controlled substance slang and jargon.

9.      I am also familiar with Meta platforms, products, and services such as Instagram based on my training, experience, conversations with other law enforcement officers, and a review of Meta's published policies and procedures.

10.     The facts and conclusions set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, my review of documents and records related to this investigation, communications with others who have personal knowledge of the events, details, and circumstances described herein, and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during this investigation. Dates and times are approximate.

C.      **BACKGROUND INFORMATION REGARDING META**

11.     Meta is a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Meta is headquartered in Menlo Park, California and owns and operates multiple free-access social networking websites including Instagram and Facebook, accessible at *http://www.instagram.com* and *http://www.facebook.com.*

//

## D. <u>BACKGROUND CONCERNING INSTAGRAM</u>[1]

12.    Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the **Subject Account** listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

13.    Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

14.    Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

15.    Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Each user account is also associated with a unique ID number.

16.    Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-

---

[1] The information in this section is based on my training and experience, and on information published by Facebook on its website and its Instagram website, including, but not limited to, the following webpages: "Data Policy," available at *https://help.instagram.com/519522125107875*; "Information for Law Enforcement," available at *https://help.instagram.com/494561080557017*; and "Help Center," available at *https://help.instagram.com*.

party websites and mobile apps for similar functionality. For example, an Instagram user can repost an image to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

17.    Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

18.    Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Facebook to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

19.    Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a profile picture, and a short biography.

20.    One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving

them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

21. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

22. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

23. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

24. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

25. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within

the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

26.    Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

***Meta's Collection of Location Data***

27.    Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

28.    Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

29.    In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

30.    For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including

usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

31.    In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

32.    Based on my training and experience, instant messages, emails, photos, videos, and records are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation and can also lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

33.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geolocation, date and time) may be evidence of who used or controlled the account at a relevant time, and device identifiers and IP addresses can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

34.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g.,

information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information to conceal evidence from law enforcement).

35.    Other information connected to the use of an account may lead to the discovery of additional evidence. For example, accounts are often assigned or associated with additional identifiers such as account numbers, advertising IDs, cookies, and third-party platform subscriber identities. This information may help establish attribution, identify and link criminal activity across platforms, and reveal additional sources of evidence.

36.    Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

E.    **PROBABLE CAUSE**

*Pre-Primary and Primary Inspection*

37.    On June 3, 2025, Ana Elizabeth Montes ("Defendant"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry. Defendant was the driver and sole occupant of a 2013 GMC Acadia bearing California license plates. Defendant is the registered owner of this vehicle.

38.    During primary inspection, a Human and Narcotics Detection Dog alerted to the undercarriage of the Defendant's vehicle near the heater core/engine area.

39.    At primary inspection, Defendant declared one bottle of alcohol and a prescription medication to a Customs and Border Protection Officer ("CBPO"). Defendant told the CBPO that she was crossing the border after attending a class in Mexico. The CBPO referred Defendant for secondary inspection of the vehicle after the canine alert.

*Secondary Inspection*

40.    Defendant's vehicle was placed on a vehicle lift at secondary inspection. While the vehicle was raised on the lift, a CBPO observed a non-factory compartment on

the bottom of the vehicle. The CBPO used a fiberoptic tool to view inside of the non-factory compartment, and the CBPO observed multiple duct-taped packages tied to a rope inside. CBPOs removed a total of 26 packages from inside of the non-factory compartment.

41.    A CBPO also recovered a black iPhone 15 from inside of the vehicle.

42.    A sample of the substance contained within the package field-tested positive for characteristics of cocaine. The approximate total weight of the cocaine was 26.94 kgs [59.39 lbs].

43.    Defendant was arrested and charged with Importation of a Controlled Substance in violation of Title 21, United States Code, 952 and 960.

### Interview of Defendant

44.    Defendant was interviewed by HSI shortly after her arrest. Defendant told agents that her name was Ana Elizabeth Montes and that her date of birth was August 14, 1978. Defendant was shown the black Apple iPhone 15 that had been recovered by CBP, and Defendant stated that the iPhone belonged to her. Defendant consented to the search of the iPhone and provided the passcode for the device.

### Introduction of Recruiter and Nexus to Instagram

45.    Defendant told agents that she worked as a hair stylist and that about a month ago, she met a person named "Benjamin" online. When asked how she met Benjamin, Defendant told agents that a client showed her Benjamin's page on Instagram. Defendant stated that after she met Benjamin online, she began taking hair extension classes from him in Tijuana, Mexico, and those classes would take place on Tuesdays and Sundays. Defendant stated that on the arrest date, she traveled to Tijuana and took a class from Benjamin.

### Identification of the Subject Account

46.    Following Defendant's arrest, the Honorable Daniel E. Butcher, United States Magistrate Judge for the Southern District of California, signed a warrant authorizing the search of Defendant's iPhone 15.

47.    The subsequent forensic examination of Defendant's iPhone revealed that Defendant has used the iPhone to access an Instagram account with the Instagram ID "**521317309**" [**Subject Account**]. A search for the Instagram account associated with that ID number revealed that the associated Instagram account bears the username "**mtnzanam**," which is the **Subject Account**.

48.    I viewed the **Subject Account** *via* the Instagram application and observed that the account is private and that most account information is not available to the public. However, the username, vanity name, and a profile picture for the **Subject Account** were viewable. I observed that the vanity name for the **Subject Account** is "hairbyana" and that the profile picture is a picture of Defendant which includes her face. I am familiar with Defendant's appearance because I interviewed her for approximately forty-five minutes and participated in Defendant's arrest processing after her apprehension. I am also aware that Defendant works as a hair stylist.

### *Nature of Evidence to be Sought*

49.    Based on my training, experience, knowledge of the investigation, and consultation with law enforcement agents who have training and experience in crimes related to trafficking and importation of controlled substances, I know that individuals engaged in these crimes often use social media accounts on platforms like Instagram, Facebook, Telegram, TikTok, Snapchat, and other social media platforms to communicate with co-conspirators. In the present case, such communications may also relate to the motives, planning, and preparation, including efforts to thwart law enforcement's efforts, of the offense. In this manner, Instagram information and records can help to establish the "who, what, why, when, where, and how" of the crime. Additionally, this social media account may have media, such as messages, photographs, and videos, that may constitute evidence of the Target Offense by, for example, demonstrating a modus operandi amongst co-conspirators, recruitment of Defendant for the controlled substance trafficking offense, planning of the offense, an association or concerted effort amongst co-conspirators,

additional overt acts, and/or efforts to conceal or cover-up the crime from detection by law enforcement.

50.     Additionally, Instagram [Meta] information and records may help to identify co-conspirators and instrumentalities of the Target Offense. For instance, through communications, videos, and shared files, investigators may locate additional people who were involved in one or more overt acts over the course of the conspiracy, or may further reveal a particular co-conspirator's role in the conspiracy.

51.     Further, based on my training, experience, knowledge of the investigation, and consultation with law enforcement agents who have training and experience in controlled substance trafficking offenses, I know that Instagram accounts may generate and store geolocation data that would constitute relevant evidence in this investigation. That data would include not only a presence during or around the time that controlled substances were placed in the vehicle, but also location data that may corroborate or refute information provided by Defendant. The location data may also demonstrate an association amongst co-conspirators and others.

52.     Altogether, and including my knowledge of Facebook and Instagram, I believe there is probable cause to believe there are records related to the **Subject Account** that may contain evidence of the Target Offense.

***Temporal Scope of the Search***

53.     This warrant requests all content from the **Subject Account** from **May 1, 2025** [the month Defendant stated that she contacted her recruiter] up to and including **June 3, 2025** [date of Defendant's arrest], and Meta location data acquired during **June 3, 2025** [date of Defendant's arrest]. As noted above, Defendant claimed to have found "Benjamin" on Instagram about a month before the arrest date. Furthermore, based on my training and experience, I know that in the weeks and days before a controlled substance trafficking offense, it is common for co-conspirators to communicate about the

conspiracy, including conversations about recruitment, compensation, logistics, and other information related to the smuggling event.

### *Request for Location Data*

54.    Additionally, this warrant seeks any and all location data for the **Subject Account** stemming from the offense on June 3, 2025. As described in greater detail above, based on my training, experience, and a review of Instagram policies, Instagram can sometimes contain location data of the user which is relevant to corroborating or refuting Defendant's statement as to where she traveled to after crossing into Mexico. Consequently, investigators believe that location data collected by Instagram for **Subject Account** may constitute evidence of the Target Offense.

## F.    PROCEDURES FOR REVIEWING ELECTRONICALLY STORED DATA

55.    Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Meta are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Meta for the relevant accounts and then to analyze the contents of those accounts on the premises of Meta. The impact on Meta's business would be severe.

56.    Therefore, I request authority to seize all content, including electronic mail and attachments, stored messages, stored voice messages, photographs, video, stories, and any other content from the Meta accounts, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Meta, to protect the privacy of the Meta's subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, Homeland Security Investigations seeks authorization to allow Meta to make digital copies of the entire contents of the accounts subject to seizure. The copies will be provided to me or to any authorized federal agent. The copies will be imaged, and the images will then be analyzed to identify communications and other electronic records subject to seizure

pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

57.    Analyzing the data to be provided by Meta may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. Meta does not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

58.    Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by Meta, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis and within **ninety (90) days** of receipt of the data from the service provider, absent further application to this court.

59.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all

electronic communications that identify any users of the **Subject Account**, and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

60.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification, segregation, and extraction of data within the scope of this warrant.

## G.    PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

61.    HSI has not previously sought a search warrant for the **Subject Account**, and no prior attempt to obtain the materials sought has taken place.

## H.    CONCLUSION

62.    Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities, including location data, of violations of the Target Offense, as described in the corresponding Attachment B, are likely to be found in the property to be searched, the **Subject Account**, as described in the corresponding Attachment A.

*Nicholas Schultz*
Nicholas Schultz
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 23rd day of January 2026.

*Barbara L Major*
HON. BARBARA L. MAJOR
United States Magistrate Judge

1
## ATTACHMENT A
2
**A.** **ITEMS TO BE SEARCHED**
3
    This warrant applies to information associated with the following account, which is
4
stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc.,
5
1601 Willow Road, Menlo Park, California 94025:
6
    An Instagram (Meta Platforms, Inc.) account with the username:
7
*mtnzanam,* using Instagram ID *521317309* ("**Subject Account**").

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

**I.    SERVICE OF WARRANT**

The officer executing the warrant shall permit Meta Platforms, Inc., as custodian of the computer files described in Section II below, to locate the files relevant to Attachment A, incorporated herein, and copy them onto removable electronic storage media and deliver the same to the officer or agent in the manner set forth in the Affidavit, incorporated herein.

**II.    ITEMS TO BE PROVIDED BY META PLATFORMS, INC.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc. ("Meta"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for Instagram account with the username listed in Attachment A [**Subject Account**]:

a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

b)    All activity logs for the **Subject Account** and all other documents showing the user's posts, reposts, and other Instagram activities from May 1, 2025 up to and including June 3, 2025;

c)    All photos and videos uploaded by the **Subject Account** and all photos and videos uploaded by any user that have that user tagged in them from May 1, 2025 up to and including June 3, 2025, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

d)      All profile information; videos, photographs, stories, and other items; followers; accounts the user is following; groups and networks of which the user is a member, rejected "follow" requests; comments; tags; and information about the user's access and use of Instagram applications;

e)      All records or other information regarding the devices and internet browsers associated with, or used in connection with that username, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

f)      All other records and contents of communications and messages from May 1, 2025 up to and including June 3, 2025, including all messages received and sent, all videos and images received and sent, chat history, video and voice calling history, voice recordings sent and received, and pending message and follow requests;

g)      All "check ins" and other location information;

h)      All IP logs, including all records of the IP addresses that logged into the account;

i)      All records of the account's usage of the "Like" feature, including all Instagram posts that the user has "liked";

j)      All past and present lists of "followers" and "following" by the account;

k)      All records of Instagram searches performed by the account from May 1, 2025 up to and including June 3, 2025;

l)      The types of service utilized by the user;

m)      The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

n)      All privacy settings and other account settings, including privacy settings for individual Instagram posts and activities, and all records showing which Instagram users have been blocked by the account;

2

o)      All records pertaining to communications between Instagram and any person regarding the user or the user's Instagram account, including contacts with support services and records of actions taken.

## III.   ITEMS TO BE SEIZED

The search of the data supplied by Meta pursuant to this warrant will be conducted by Homeland Security Investigations as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period from **May 1, 2025** up to and including **June 3, 2025** (as pertains to location data, the date **June 3, 2025**), and to the seizure of communications in any form, writings, images, records, videos, recordings, attachments, location data, or photographs:

a)      Tending to discuss or establish the commission of the Target Offense, namely the Importation of a Controlled Substance in violation of Title 21, United States Code, 952 and 960 and conspiracy to commit the offense;

b)      Tending to identify co-conspirators involved in the smuggling of controlled substances into the United States;

c)      Tending to establish Defendant's knowledge that controlled substances were in the vehicle at the time Defendant entered the United States from Mexico on June 3, 2025;

d)      Tending to identify the means by which controlled substances were placed in the vehicle driven by Defendant and knowledge by Defendant and other co-conspirators that the controlled substances in the vehicle were controlled substances;

e)      Tending to identify efforts to plan or execute the crime or otherwise thwart law enforcement's investigation;

f)      Tending to identify any recruiters to the importation of controlled substances;

g)      Location data tending to identify an association amongst co-conspirators or those involved in the acquisition, transportation, distribution and importation of controlled substances on June 3, 2025;

h)      Tending to demonstrate who had possession of the vehicle driven by Defendant throughout June 3, 2025;

i)      Tending to indicate how and when the **Subject Account** was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Instagram account owner;

j)      Tending to indicate the **Subject Account** owner's state of mind as it related to the crime under investigation;

k)      Tending to demonstrate the identity of the person(s) who created or used the **Subject Account**;

l)      Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

All of the above constituting: (1) evidence of a violation of the Target Offense; (2) contraband, fruits of the same offense or other items illegally possessed; or (3) property designed for use, intended for use, or used in committing this offense.